Good morning, Mr. Taubman. Good morning, Your Honor. And may it please the Court, I'm Glenn Taubman on behalf of Bernard McKay. After two prior trips to this Court, this case now presents a clean legal issue. What does an employee have to do to become a voluntary and consenting member of the union or any other membership organization, and what affirmative actions must the employee take before he can be said to have become a voluntary and consenting member of the union? After this Court's second remand, the District Court held that Bernard McKay was a voluntary and consenting member based upon two essentially undisputed facts. First, that he once paid AMFA the money that it had demanded under pain of discharge, and he expressed a willingness to continue to pay because otherwise he would have been discharged. And second, that McKay never filed an objection under the union's Hudson notice. What significance is there, if any, to the testimony that was before the trial judge that the information concerning the agency fee arrangement and policy, that that document was furnished to Mr. McKay, that it was supposedly explained to him? I think Lovis said that. He actually went through it, what it meant. Your Honor. What is the significance of that information? There's exactly no significance to that. Mr. Lovis testified that he gave Mr. McKay the notice precisely because the union had no earthly idea whether he was a member or not. That's on two excerpts of record 185. They gave him this Hudson plan. The Hudson plan, if you look at it, trial exhibits 12 and 13, it says nothing about the choice to be a member or a nonmember. It's very important for the Court to remember what I call the decision tree in this case. The employee first has to decide, do I want to become a union member or remain the nonmember? And only if he is the nonmember does the Hudson issue even come up. Do I choose to pay full dues even as a nonmember? Or do I choose to be a Hudson objector and pay the reduced dues? The fact that somebody remains silent and pays the full dues does not make him a member. That's the prior step on the decision tree. So this whole issue of, well, gee, we gave him this Hudson notice and we explained that he could have paid a reduced fee, that says nothing about the prior initial issue of was he a member to begin with. You have to remember it. But just hypothetically, assume that he understood there were two choices. One would be to pay membership dues so he could maintain his job, or alternatively, that he could pay the agency fee and maintain his job. Just assume hypothetically that he understood those two options. And then he took certain action which the trial judge deemed to be consistent with becoming a member. In your judgment, that wouldn't be sufficient? In other words, you can't look, it isn't only what he says, but what, but what? I shouldn't even say, it isn't what he says. Because he never said, according to some of the testimony, he, that was before the judge, including from the president of the union and Mr. Lovus. He never said, I am not going to become a member of the union. The most he ever said was, I don't want the mailings, and I don't intend to frequent any of the meetings. Your Honor, first of all. We're trying to look at, in other words, it's a bench trial. There's a decision by the judge. And then we have to look and see if there's adequate evidence in that record to support the conclusion that he reached. And I know that gets into a question of whether it's a question of law and so forth, but that's our issue. So if you can. I understand that exactly that's your issue. The judge made a finding that Mr. McKay said, I'll pay you your money, but I don't want to get mailings. I don't want to be involved. I would say, number one, that's not the statement of a happy and contented voluntary union member. Number one. Yeah, but you know, hasn't, wasn't, wasn't all of this really settled in four, ordained as it were, the first round, where nobody's challenging the fact that the critical issue is whether he was a member of the union before you get to Hudson. It's not, it's not the, Hudson doesn't come first. That's correct. Comes first, is was he a member? So we sent it back last October because we couldn't tell what the district court found, whether it found he was a member or he wasn't a member. So this time the district court squarely says, look, he is, was a member of the union, the union offered membership. If you pay dues, he paid dues. Therefore, objectively under Washington contract law, he became a member, period, end of it. Now, what is, where does that go wrong? Okay, where it goes wrong is in, look at the timeline. In April 1998, the union posts a flyer and says, in ANFA, everyone is a member. That's the first thing wrong. This is the United States of America. You can't draft people under federal labor law. You can't, and there are all kinds of. Well, we don't even have to get there because just, in effect, you have offer and acceptance. You say, you know, I'm offering you membership if you pay, if you pay dues. You know, you'll get a lot farther if you let the judges finish their questions. I'm sorry, Your Honor. You know what my question is, so go ahead. I'm sorry. Again, let's look at the timeline. They make this, quote, offer, okay? A year and a half goes by. Does Mr. McKay voluntarily pay them a dime? No. He doesn't come to them and say, oh, I accept your offer. I want to be a member. Here's my voluntary dues. In fact, what happens is, he doesn't pay them a dime. He doesn't participate. He doesn't go to any meetings. A year and a half goes by. Then, they get a union security clause. Now they come to him under these circumstances. They put a gun to his head, and I asked the court to look at. That's the fact of the union security clause. It is a great big gun, but it's lawful. But how does that make him? I'm not saying the union security clause is not lawful. The question is, how does that make him a voluntary and consenting member? The law of membership, not just in unions, but in any organization, is you have to take some voluntary affirmative action. This union has a kind of, excuse me? He paid them lucky dollars. Under the threat of a union security provision and a letter, if you look at the letter, says nothing about, if you pay this money, you will become a member. If you pay this, you'll be deemed to waive your Hudson rights. It says nothing like that. I take it you made these arguments to the district court. All of these arguments to the district court. And the district court had to look at the witnesses and assess their credibility and found all the witnesses credible. Including my client, Your Honor. Including your client. I said all of the witnesses. And he concluded on hearing that evidence that as a matter of fact, that the arguments that you're making, he resolved in favor of the union. Because there were ambiguous statements probably on both sides. So what do we do with that? Are you saying that as a matter of law, the factual findings are absolutely wrong? No. Are you saying that you're disagreeing with the factual inferences or the inferences that the district court drew from the testimony, the conflicting testimony that he heard? Actually, neither of those, Your Honor. What I am saying is we do not challenge the district court's findings of fact whatsoever. My argument is that as a matter of law, that quantum of facts, those actions or inactions by Mr. McKay cannot constitute voluntary union membership. Under cases like United Nuclear, which says that the union cannot conscript people and act in an ultra-virase manner. Under cases like Carroll versus Blinken that I cited in the supplemental authority, which says that a union cannot just automatically make people who pay compulsory fees members. It is those cases under pattern makers. And this Court's Stanford and Hershey Foods cases, a long line of cases that explore what is voluntary unionism. And so my question to the district court is. This same issue existed three trips ago. I mean, I'm sort of talking, asking a law of the case question, sort of not. But the same issue's been on the table. And it was sent, there was, we said on summary judgment, should not have been entered because there were triable issues of fact on a simple question. That is, was he a member or wasn't he a member? Had you been correct, you would have been correct then. If as a matter of law, he could not have been a voluntary member because, let's say, the union didn't follow the procedures in its constitution. You could have said that three trips ago and ended this thing. Your Honor, I had asked this Court to do precisely that three trips ago. I know, and it didn't, nor did we last time. This Court twice in the both remands said there are triable issues of both fact and law. I'd say, of course, there are triable issues of fact. And had the District Court found that he was a, he was not a member, then there would have been a big Hudson issue. Agreed. We're not at a Hudson point in this case because my argument is that as a matter of law under the cases United Nuclear, Carroll v. Blinken, Pattern Makers, and so on, voluntary unionism, which is the law of the United States, requires affirmative voluntary consent. To go back to Judge Hurley's question, Mr. McKay is also in the record that Mr. McKay told the union president, I'm not going to join. I'll pay your dues. And that's 2 ER 116, 117. But I don't think the trial judge accepted that. He said that he, your client was a very credible witness. As indicated earlier, he said basically all the witnesses or the ones that were specifically mentioned in his opinion were very credible. I understand. But with respect to the conversation with Juricinski, I think what the judge said was, Juricinski had a specific recollection of this particular conversation. And that's, he corrected that following that second remand. And Juricinski said, no, he never said I didn't, that he didn't want to be a member of the union. He never said that. He just said about the mailing and the meetings. And your client, the judge found, didn't have a specific recollection concerning that meeting, so he couldn't rebut it. But there was a prior conversation that the judge made no findings of fact on whatsoever. Again, 2 ER 116, 117. But again, the union keeps saying, my client never said, I don't want to be a member. But I'm asking the court to take a look and see where my client ever said that I want to be a member. He never executed a membership application. He never received a membership card. He never received a copy of the union constitution. These are all facts that are in the record. How does somebody who does, who doesn't do those things, who doesn't sign a membership card? Because the district court found in this case, in effect, waiver of those constitutional requirements across the board. And that the deal was, I offer membership if you pay dues. And he did. And so are you now, I mean, is your, does your position reduce down to the fact, reduce down to the contention that as a matter of law, the union had to follow the constitutional procedures before anybody could be a member of that union? My time is running out, and I do want to save time for rebuttal. But my position on that question, Your Honor, is that the union having an organic rule should follow, right? I mean, is your answer to my question yes? I think that the union should have to follow their own constitution. But even, but even if they don't. Yeah, Mr. Talman, to me this is, I mean, should, would, could, must is my question. Yes, I would say must under United Nuclear. The answer, the answer then is must under my theory of the case. All right. And we have, in your view, we have not already passed that. That is, this court has not already passed that court.  I don't believe so. All right. I would like to reserve the remainder of my time. Okay. It pleases the court. I'm Nicholas Schrenath, and I'm representing the mechanics at Alaska Airline organized into the union. And I must say that there's been so much time in this case that I now have to wear glasses. So I apologize for coming and going on that. The core issue in this case, last time that we were around. You can get a worker's comp for that. Well, Your Honor, I'm so advised. Last, we've been doing this now for seven years. And this is the third appeal. And we've really been to trial court, by my count, really three times. We've had a full trial, and there's no challenge it was fair. The core issue has always been, was Mr. McKay presented with a choice? Did he voluntarily join the union? And the finding now is, at long last, clarified. Yes, he voluntarily joined the union. He did that when he paid his dues. That's what the court found. And the court found on top of that, that he ratified that. What we have in this case at court is that the plaintiff was advised of his choice. The plaintiff was notified of his choice. The plaintiff was informed. The plaintiff had conversations. He was really given handheld treatment, if you will, of what his choice was. And in that context, he had the choice of you could pay membership dues, or you could pay agency fees and not be a member. And he voluntarily, without duress of any kind, voluntarily paid those dues. Then he ratified. I just had a question. On January 6th, when the check, I don't know if it was a check or cash, was paid. It was a check, Your Honor. It was a check. At that time, was there any agency fee? In other words, was the agency fee presumably something less than $88? Yes, Your Honor. There was an agency fee, and it was less. And that was discussed, and you can see that in the record. And you can see that in the findings in the discussions with Lovis, who was found to be a highly credible witness by the court. And he walked the plaintiff through the difference between germane and non-germane. And of course, the whole point of that is there is a difference. And you will actually find. But when he did that, when Lovis went through that with Ms. McKay, did he indicate? I mean, is there something in the record as to what the lesser fee would be, the agency fee? Yes, there is, Your Honor. And I'm not going to be able to cite it to you. Where is that? There wasn't, I mean, there was no compliance with the Hudson policy up to that point. I mean, you hadn't circulated any statement or any accounting or any of that stuff. So if that's necessary for your position, you're. Let me jump back to the Honor's question. You know why I'm asking it. The answer, but the answer is yes, in the record you'll find that it was about 95 percent. I believe that's what it was. There is, that is in the record. There was actually a lesser amount. And the situation here is simply that. So the implication is by paying the 90, which was $2 over. But in any event, he was indicating his agreement, acceptance of the offer, that he would be a union member. Exactly. But there was certainly no trickery or there was no, the facts were on the table. I just wanted to know if there was anything in the record that would provide some certainty as to the significance of the $90 payment as distinct from some other sum, which was never defined. Exactly. You know, there was discussions with Mr., with plaintiff about the difference in what these two represented. It wasn't an academic discussion about which fees are germane and which are not. But there was a lesser sum, and it's important, you'll see in the record, the union could not, it was impossible for them to perform an audit because they were new to the property. They did convey publicly to all their members that an audit was forthcoming. But while this happened in January when the plaintiff indicated that he would join by being, by accepting the offer and by paying, there was no audit at that time. The union arbitrarily, I think, not capriciously, but they did give some estimate based on what it would be based on other airlines, but we never get to that because the plaintiff never, never went after that. He was never invoked at, he never invoked Hudson in discussion of it. When they're explaining the choice, though, in other words, if he paid $88, then you would say, well, that is exactly what he should have paid for the dues. So we can infer that the trial judge properly concluded he was accepting the offer to become a member. There's no doubt in my mind. That's the first part. But then the second part is if there was a lesser sum, which he was aware of, that would be the only significance. It's not a question of whether he complied with Hudson or not. It's a question of whether they said to him, in effect, or you can pay $30 or $35 doubled because it was two months involved. And that would cover you under the agency fee. Was there any evidence of that sort before the judge, the trial judge? I believe absolutely there was. And I'm just going to caveat because, by all means, look at the record and look at the findings in detail because there's a voluminous material after seven years. And I'm very much aware that I could easily misspeak and mislead you. But obviously, the record is there. We did have a situation where the district court complied with the orders and very, very scrupulously went back and looked at the record and adjusted their. But I think, and last time I was here, Judge Berzon said about the Hudson policy that the significance of that was, and this is from the supplemental excerpt on page 221. Judge Berzon said, but the one thing it did was it really informed him of his rights that he didn't have to be a member and what to do if he didn't want to do that. And that, I think, is the relevance to that discussion about the policy that was had with Mr. McKay. But the point, though, is that the district court found, as a matter of fact, after a fair and thorough trial, that the plaintiff understood the choice. And I think that's the point. I'm just wondering, for example, when the Union has not followed the procedures for membership set out in the Union constitution and he relies on United Nuclear, and I've actually forgotten the other case, but I think United Nuclear is the big one that he relies on, always has. I think you're correct. I assume you disagree with that. I do. Why? Because the Union is a private organization regulated by law. In the first instance, establishes its own requirements for membership. What happened here was separate and different, distinguishable from the nuclear situation. In the AMFA case, in this case, there was a universal waiver by the highest body of the organization, the NEC. They came to all of the employees, far and apart and before we ever get to the plaintiff in this case, and said, we will waive all these formal requirements and all you need to do is pay the dues if you want to join. If you don't, fine, then you can pay the agency fees. Nobody was forced to join. Nobody was forced to pay. In nuclear, it's a fundamentally different animal. In nuclear, you had some low-level officers who regarded persons as members based on some activities that they part ways did along the line. There was no dues question there. There was no universal waiver there. And so in nuclear, they're dealing with an estoppel situation where a select group of employees now is being treated different from how everybody else was treated after the fact. And the union is trying to stop them to say, well, because you started the formal procedures but didn't finish it, that's good enough. Not the case at Alaska Airlines. At Alaska Airlines, the union openly conveyed to everyone that you don't have to take the formalities. We're waiving the formalities. We're not going to burden you with the formalities. We're not going to ask you to have a vote and be investigated and applied. If you want to pay dues as a member, fine. If you don't, you don't have to. See, at some level, it's kind of astonishing that any organization, whether it's a union or a civic group or whatever, can say, look, everybody in a particular category is a member of my organization unless you say you're not. I don't think that's what happened here, though, Your Honor. And I think that's their argument. They want to say there was some kind of a draft or something. Who was drafted? No one. Everybody had the choice. If somebody didn't want to join, they didn't have to. They didn't have to pay. Nobody came to anybody, certainly not the plaintiff, and said, you got to pay. Oh, well, of course they did. In January, it came and said, you got to pay or you're out of a job. I mean, that's pretty crystal clear. It said, I think what it really said and what the court found on solid evidences and challenge here, you know, you have a choice. The choice wasn't to the plaintiff, pay us money or you're going to lose your job. He had to pay something, right? Yes, but the choice was you can pay an agency fee for a nonmember. Which they didn't tell him how much that was. So did he really have a choice? He did, because it was conveyed to him repeatedly. And it had been for at least four conversations now. And he had the policy, which whatever the policy had been due, it was information that there was another route besides membership. And he didn't ever go after that. And then when he did pay, he didn't qualify. And after that, he didn't qualify. And then we go down the road later on, and when he stops paying, now he says he does want to pay. What does he want to pay? Dues. And in this context, he had all the choice in the world. We leaned over, the union leaned over backwards to give him the choice. And he paid once, and he stopped paying. And that was unfortunately consistent with what had been the problem all the way along. And what he was really in the process of doing was attempting to become a class of a free rider. And that was where the problem came into being. But it's not the case there was a draft. There never was. I have four minutes left, unless there's a question I'll reserve. I don't think you have that option. Oh, I don't have that much time? No, you don't reserve it. You can't respond. You're through. But you can be through. That's fine. It's up to you. It's up to you. After seven years, you've got to give me something, but I apologize. Are there any other questions, Your Honors? Save your eyes. Okay. Mr. Taubman. Thank you, Your Honors. A few very important points. First, with regard to Judge Hurley's question, not a shred of paper in this record shows Mr. McKay what this so-called reduced fee was in January 2000 when he was supposed to have paid it, not a shred. If you look at the case, there's no obligation for that, is there? Well, their whole case is based upon the fact that he allegedly made this choice to pay full dues. He made a choice to pay dues or not to pay dues. But there was no reduced fee amount. I agree with that. But he didn't say, is there anything in the record that he said, these are for fees, not for dues? The record shows that Mr. McKay said, I'll pay you your money, but I don't want to be involved. He said he would pay dues. Well, the word dues, as I've pointed out in the brief, is a word that to the average person paying you the union, it's not some kind of special term of art that when I get this letter... All I'm saying is the district court who heard these people, not you, not what we are interpreting, but what the district court, with all of these arguments before it, heard and resolved as a matter of fact that he said he would pay dues. And my response to that is, as a matter of law, this cannot be voluntary union membership under the law. It's also important to point out that the offer, quote-unquote, that was allegedly made to Mr. McKay was when membership was voluntary. It was before there was a union security clause that had come in, and he didn't pay at that point. A year and a half went by. How can he be said to have been a voluntary member when he didn't make voluntary payments? Then the clause comes in, a gun is put to his head, and under the law, somebody who pays full dues can still be a nonmember. I cited cases, this Court's Mitchell and others, and... Just tell me your time is... Thank you, Your Honor. Thank you so much, both of you, for your argument. And we'll see you in court. In case we'll see you. All right. Thank you. Thank you both for your argument, and the matter just argued will be submitted. And we'll next hear argument in Davis v. Homecomings, Financial. I'm sorry, I said the wrong... I'm sorry, go ahead. May. I'm sorry, I just called the wrong case. Davis v. Honeywell. Davis v. Honeywell? Yeah. My eyes just skipped. Yeah, you're right. Unfortunately, I am, because I missed the note.
judges: Rymer, Fisher, Hurley